## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNIVERSITY LEGAL SERVICE -**<br>**PROTECTION AND ADVOCACY, INC.**<br>220 I Street, N.E., #130<br>Washington, D.C. 20002 | )<br>)<br>)<br>) |
| | CASE NUMBER   1:04CV01021 |
| | JUDGE: Reggie B. Walton |
| **Plaintiff,** | DECK TYPE: TRO/Preliminary Injunction |
| **v.** | DATE STAMP: 06/22/2004 |
| **JOHN STUPAK, ACTING DIRECTOR**<br>**NORTHWESTERN HUMAN SERVICES,**<br>in his official capacity,<br>4406 Georgia Ave., N.W.<br>Washington, D.C. 20011 | )<br>)<br>)<br>)<br>) |
| **and** | )<br>) |
| **MARTHA B. KNISLEY, DIRECTOR,**<br>**DISTRICT OF COLUMBIA**<br>**DEPARTMENT OF MENTAL HEALTH,**<br>in her official capacity,<br>64 New York Ave., N.E., 4th fl.<br>Washington, D.C. 20002 | )<br>)<br>)<br>)<br>)<br>) |
| **Defendants.** | ) |

### COMPLAINT

NOW COMES Plaintiff, by and through its counsel, and for its complaint against Defendants,

states and alleges as follows:

### Preliminary Statement

This is an action for declaratory and injunctive relief brought by the University Legal

Complaint – p. 1.

Services - Protection and Advocacy, Inc. ("ULS-P&A") pursuant to the Protection and Advocacy

for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§10801-10827 and

42 U.S.C. §1983. Defendant John Stupak, Acting Director of Northwestern Human Service

("Northwestern"), directly and through his agents has refused to give ULS-P&A access to records

of Northwestern and the records of consumers of mental health services provided by

Northwestern, records which ULS-P&A has requested pursuant to its authority under the PAIMI

Act.

Similarly, Martha Knisley, directly or through her agents and employees, has refused to

give ULS-P&A access to District of Columbia's Department of Mental Health ("DMH") records

that ULS-P&A has requested pursuant to its authority under the PAIMI Act.

ULS-P&A alleges that the Defendants' refusal to provide ULS-P&A access to these

records violates the PAIMI Act, and the First and the Fifth Amendments of the U.S. Constitution.

## Jurisdiction and Venue

1.      Jurisdiction is conferred upon this court pursuant to 28 U.S.C.§§1331 and 1343(a)(4) as

        this action arises under 42 U.S.C §§10801-10827 and 42 C.F.R. §51.41 and the First and

        Fifth Amendments to the Constitution of the United States and 42 U.S.C. §§ 1983.

2.      Venue in the United States Court for the District of Columbia is invoked pursuant to 28

        U.S.C. §1391(b) as this is the judicial district in which a substantial part of the events or

        omissions giving rise to the claim occurred.

## Parties

3.      Plaintiff ULS-P&A is an agency mandated by Congress and designated by the mayor of

        the District of Columbia to provide protection and advocacy services to individuals with

Complaint – p. 2.

disabilities. ULS-P&A is authorized to investigate incidents of abuse, neglect and civil

rights violations and to pursue administrative, legal, and other remedies on behalf of

individuals with mental illness wherever programs for such individuals are operated

within the District of Columbia or within the District's control. 42 U.S.C. §10805 and 42

C.F.R. §51.41(b)(2).

4. Defendant John Stupak is Acting Director of Northwestern which is a service provider to

persons with mental illness, doing business in the District of Columbia and providing

governmental services for DMH. Northwestern was certified by the District to deliver

services on behalf of the District as an Assertive Community Treatment ("ACT") team,

providing what was supposed to be intensive, integrated crisis treatment for consumers

with serious and persistent mental illness. 22 DCMR 3423.1.

5. At all relevant times, Northwestern was acting under color of state law. Northwestern is

authorized and certified by the District of Columbia to provide Medicaid funded mental

health services. Northwestern's actions are governed by the District's laws, regulations,

policies, contracts and other District of Columbia authority. John Stupak, as Acting

Director of Northwestern, acted at all times under the color of state law and within the

scope of his employment.

6. Defendant Martha Knisley is the Director of the District of Columbia's Department of

Mental Health ("DMH"), which is a public agency of the District of Columbia. DMH is

the District of Columbia agency responsible for regulating all mental health services and

mental health supports in the District of Columbia and is responsible for assessing and

meeting the service needs of District of Columbia consumers of mental health services.

Complaint – p. 3.

D.C. Law § 7-1131.03 and § 7-1131.04.

7.     At all relevant times to this action, Defendant Knisley was operating under the color of
       state law as a representative of a public entity and within the scope of her public
       employment.

## Factual Allegations

8.     ULS-P&A has a federally protected right to obtain certain information in order to
       investigate suspected abuse or neglect of vulnerable persons with disabilities and has
       instituted this action to redress the refusal of the Defendants to disclose certain
       documents. The PAIMI Act, 42 U.S.C. §§10801-10827, gives each state's protection and
       advocacy system the right to access records in order to fulfill the statute's purpose: "to
       ensure that the rights of individuals with mental illness are protected." 42 U.S.C
       § 10801(b)(1).

9.     The PAIMI Act was enacted in 1986 by Congress to establish independent protection and
       advocacy programs ("P&As") nationwide with authority to protect individuals with
       mental illness from abuse and neglect. 42.U.S.C. § 10801(b)(2)(A), (B). Congress
       established P&As in response to the myriad accounts of abuse and neglect against
       individuals with mental illness that were substantiated by congressional investigations.

10.    Congress found that "individuals with mental illness are vulnerable to abuse and serious
       injury" as well as "neglect, including lack of treatment, adequate nutrition, clothing,
       health care, and adequate discharge planning." 42 U.S.C. § 10801(a)(1), (3). Moreover,
       Congress found that "[s]tate systems for monitoring compliance with respect to the rights
       of individuals with mental illness vary widely and are frequently inadequate." 42 U.S.C.

Complaint – p. 4.

§ (a)10801(4).

11.  Congress granted P&As the power to investigate incidents of abuse and neglect of persons with mental illness if the incidents are reported to P&As or if P&As have probable cause to believe that incidents have occurred. 42 U.S.C. § 10805(a)(1)(A). To meet this objective, Congress gave P&As the broad authority, under certain circumstances, to access *all* records of individuals with mental illness, including "[ r]eports prepared by an agency charged with investigating reports of incidents of abuse, neglect and injury." 42 U.S.C. §§ 10805(a)(4) and 10806(b)(3)(A).

12.  ULS-P&A is designated by the District of Columbia as the protection and advocacy system for individuals with disabilities throughout the District.

13.  DMH is required by District of Columbia law to "plan, develop, coordinate, and monitor comprehensive and integrated mental health systems of care for adults . . . [and to] arrange for all authorized, publicly funded mental health services and mental health supports for residents of the district, whether operated directly by, or through contract with, the Department." D.C. Law § 7-1131.03 and § 7-1131.04.

14.  On or about March 25, 2003, ULS-P&A sent a grievance to DMH about Northwestern in which ULS-P&A asked DMH to investigate Northwestern for certification violations related to one of ULS-P&A's clients who was homeless, dirty, disheveled, and eating out of garbage cans. ULS-P&A has written many letters, made dozens of phone calls, and participated in several meetings with DMH and Northwestern, attempting to improve the care and financial management for clients who were served by Northwestern.

Complaint – p. 5.

15.   Upon information and belief, Northwestern is a service provider to persons with mental illness, doing business in the District of Columbia and providing governmental services for DMH. Northwestern was certified by the District to deliver services on behalf of the District as an ACT team, providing what was supposed to be intensive, integrated crisis treatment for consumers with serious and persistent mental illness. 22 DCMR 3423.1.

16.   On or about February 18, 2004, ULS-P&A attended a meeting at which DMH explained that the Federal Bureau of Investigations and the District of Columbia Office of the Inspector General were investigating Northwestern Human Services for allegations of fraudulent billing and Medicaid fraud.

17.   Upon information and belief, DMH has performed an investigation and given Northwestern a written statement of noncompliance, to which Northwestern has responded or has had the opportunity to respond.

18.   On or about March 23, 2004, ULS-P&A sent a letter to DMH Director Martha Knisley requesting documents, including the names of consumers, or their guardians, suspected to be impacted by the alleged financial wrongdoings of Northwestern. The letter also requested DMH's investigation concerning the alleged financial wrongdoing, the corrective action plan, and all other documents in DMH's possession as a consequence of the investigation.

19.   On or about that same date, ULS-P&A wrote to Northwestern requesting similar documents and information concerning its staff.

20.   On March 26, 2004, ULS-P&A met with representatives of the District of Columbia Office of the Inspector General for the District and the Federal Bureau of Investigation,

Complaint – p. 6.

who confirmed their investigations and explained that their investigation would not

foreclose ULS-P&A from continuing to work for restitution for the consumers who may

have been victimized.

21. DMH responded to ULS-P&A's March letter by stating that DMH is actively

investigating the various allegations and because the investigation "is active and ongoing,

DMH is not in a position to send ULS a 'complete copy' of any of the requested

information." DMH acknowledged that ULS had authority to request the information and

agreed to provide the documents but required "appropriate authorization from the

consumers in question before releasing any information about a consumer's mental health

treatment."

22. An attorney for Northwestern responded to ULS-P&A, asking ULS-P&A to provide

authority for its request, but Northwestern did not produce any documents at that time.

23. Upon information and belief, Northwestern is legally going out of business in the District

on or about June 30, 2004, and all of its consumers must be transitioned to a new service

provider.

24. Experts who have worked with individuals with severe mental health issues understand

the need for intensive case management and support during times of transition, especially

during a transition from one clinical service provider to another. Many of Northwestern's

consumers are homeless and may be lost to the system entirely without advocacy on their

behalf.

25. ULS-P&A provided DMH with a detailed letter explaining ULS-P&A's concerns about

the poor services Northwestern had provided in the past to consumers of mental health

Complaint – p. 7.

services and how critical it was for there to be extensive outreach to these vulnerable

consumers during the transition from Northwestern to another service provider.

26.    In addition to the general requests for documents, ULS-P&A sent requests for specific

individuals' records to both Northwestern and DMH, which included individual

authorizations for the requested documents.

27.    On May 5, 2004, ULS-P&A called and spoke directly DMH General Counsel, Ms. Anne

Sturtz. Ms. Sturtz explained that DMH would not provide ULS-P&A with any of the

requested documents until the DMH investigation was complete. ULS-P&A expressed

concern about the delay, given that Northwestern is closing at the end of June. Ms. Sturtz

did not state when the investigation would be complete.

28.    On May 14, 2004, ULS-P&A again asked DMH to release the requested documents. In

that letter, ULS-P&A described why the P&A needed to receive the documents in order

to protect the interests of the vulnerable people with mental illness who are dependent on

Northwestern.

29.    In detailed letters to both DMH and Northwestern, ULS-P&A explained its PAIMI Act

authority, which requires DMH and Northwestern to release the documents.

30.    ULS-P&A amended its requests to both DMH and Northwestern to be more specific

about the requested records.

31.    After several additional requests, Northwestern allowed ULS-P&A to view some but not

all of the records of four clients for whom ULS-P&A presented signed authorizations.

Nevertheless, Northwestern has not provided all of the records requested, including all of

the individuals' financial records.

Complaint – p. 8.

32.    After ULS-P&A called DMH pursuant to this Court's Local Rule 7(m) to confer

concerning ULS-P&A's imminent filing of the Motion for Preliminary Injunction, DMH

released a copy of a DMH report concerning Northwestern. The report is authored by the

DMH's Office of Accountability on February 9, 2004, and is addressed to Ms.

McWilliams-Roth, the Director of Northwestern Human Services. The report is titled:

Preliminary Findings from Focused Review of Your Consumer Records/Corrective

Action Required.

33.    The report stated that "DMH is **substantiating** [emphasis in the original] Dr. Gleason's

[former Northwestern psychiatrist] complaint that [Northwestern] lacks documentation

for expenditures from consumer accounts where [Northwestern] is the representative

payee, has not accounted for missing consumer funds and has little or no documentation

of what services [Northwestern] has provided to some consumers." Preliminary Findings

at 1.

34.    Dr. Gleason's allegations were extremely troubling. According to the Preliminary

Findings, Dr. Gleason's complaint alleged "although [Northwestern] held large sums of

funds for some consumers for whom [Northwestern] served as representative payee,

[Northwestern] was not providing appropriate services and was not accurately accounting

for funds expended." Some consumers were homeless despite the fact that Northwestern

maintained large sums of money on their behalf. "He also alleged that [Northwestern]

staff has personal relationships with some of the landlords and housing operators from

whom consumers rent and that these housing providers are paid exorbitant rents for

substandard housing."

Complaint – p. 9.

35. Outreach and advocacy on behalf of individuals with mental illness during times of transition can be critical, especially transition from one service provider to another.

36. Upon information and belief, many of the individuals for whom Northwestern is the service provider are homeless, have been and continue to be subject to abuse or neglect, and may be lost to the mental health system entirely without advocacy on their behalf during the transition from Northwestern to another service provider.

37. Upon information and belief, many of the individuals for whom Northwestern is the service provider are in urgent need of funds that may have been wrongly appropriated or mishandled by Northwestern, and yet these individuals may not understand that there money has been inappropriately handled or may be unable to effectively advocate on their own behalf for restitution from Northwestern.

38. ULS-P&A was able to view account statements that indicated that homeless consumers had accumulated funds well beyond the income limits for the federal Social Security program. These clients, who have experienced malnourishment and pneumonia while homeless, may lose thousands of dollars that should have been used to meet their needs.

39. Individuals who need ACT services have severe and persistent mental illness such as schizophrenia, psychotic disorders, and bipolar disorder with a history of hospitalization, substance abuse, criminal justice involvement or other indication of high service needs, and as a result of their mental illness, have significant difficulty performing daily living and employment tasks.

40. ULS-P&A visited Northwestern on or about June 3, 2004, and at least five of the consumers spoken to were homeless, some of them living on the streets. One of the

Complaint – p. 10.

consumers that ULS-P&A represents is missing.

## COUNT I
### 42 U.S.C. § 10801 et seq. ("PAIMI ACT")

41.    Plaintiff incorporates paragraphs 1 through 40 as if fully set forth herein.

42.    Under 42 U.S.C. § 10805(a)(4)(A), P&A programs may have access to **all** records of any
       individual who authorizes the access.

43.    Certain individuals have authorized the Defendants to release certain records to ULS-
       P&A.

44.    Under 42 U.S.C. § 10805(a)(4)(B), P&A programs are authorized to have access to **all**
       records of any individual with a mental illness who by reason of the mental or physical
       condition of such individual is unable to authorize the system to have such access,
       provided the individual does not have a guardian or has a public (state agency) guardian,
       and with respect to whom the P&A System has probable cause to believe that such
       individual has been the subject of abuse or neglect.

45.    Some of the individuals whose records ULS-P&A has requested are covered by the terms
       of 42 U.S.C. § 10805(a)(4)(B), as they are incapable of providing authorization for the
       release of their records and do not have a guardian or have a public guardian.

46.    Under the regulations implementing the PAIMI Act at 42 C.F.R. § 51.2 (definition of the
       term "probable cause") and relevant case law, P&A Programs are the sole arbiter of the
       determination of probable cause under the PAIMI Act.

47.    ULS-P&A has made a determination of probable cause to suspect that the consumers
       whose records are sought have been and continue to be subject to abuse and/or neglect.

Such determination is based on the multiple investigations of Northwestern regarding its

apparent mismanagement of consumers' funds needed to pay for their daily living

expenses (food, shelter, clothing, medicine, etc.) and DMH's substantiated findings

regarding such practices, as well the fact that such consumers apparently are not being

properly transitioned from Northwestern to another provider of mental health services.

48.    The PAIMI Act at 42 U.S.C. § 10806(b)(3)(A) defines "records" available to a P&A

system to include, "reports prepared by any staff of a facility rendering care and treatment

or reports prepared by an agency charged with investigating reports of incidents of abuse,

neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and

injury occurring at such facility and the steps taken to investigate such incidents, and

discharge planning records."

49.    The records requested by ULS-P&A fall within the broad description of records and

information to which ULS-P&A must have access in order to complete a thorough

investigation.  42 U.S.C. § 10806(b)(3)(A) and 42 C.F.R. § 51.41(c)(1) through (5).

50.    Defendants have denied ULS-P&A access to these records.

51.    Defendants' refusal or failure to give ULS-P&A access to consumers' records, as well as

the DMH investigations report and related documents, violates the PAIMI Act, 42 U.S.C.

§ 10805(a)(4)(B) and its implementing regulations, 42 C.F.R. § 51.41(c)(1) through (5).

52.    Under the regulations implementing the PAIMI Act at 42 C.F.R. § 51.43, a service

provider is required to provide to the P&A promptly upon its request the name, address

and telephone number of the legal guardian, conservator or other legal representative of

an individual with mental illness.  The service provider also is required to promptly

Complaint – p. 12.

provide to the P&A the identities and contact information for persons with mental illness themselves.

53.   Defendants have failed to provide to ULS-P&A the identities and contact information for consumers of mental health services and for their guardians in violation of the PAIMI Act and its implementing regulations.

54.   The Defendants have violated and continue to violate the PAIMI Act by: (a) preventing Plaintiff from conducting an investigation when ULS-P&A has probable cause to believe abuse or neglect has occurred and (b) preventing Plaintiff from fulfilling its obligations under the PAIMI Act. 42 U.S.C. § 10805(a)(1)(A).

55.   The Defendants have violated and continue to violate the PAIMI Act by preventing Plaintiff from pursuing administrative, legal and other appropriate remedies on behalf of the Northwestern consumers for whom Plaintiff has probable cause to believe may have been subject to abuse or neglect.  42 U.S.C. § 10805(a)(1)(B).

56.   ULS-P&A has no adequate remedy at law and continues to suffer irreparable harm as a result of Defendants' actions.

### COUNT II

### 42 U.S.C. § 10801 et seq. ("PAIMI ACT") and 42 U.S.C. § 1983

57.   Plaintiff incorporates paragraphs 1 through 56 as if fully set forth herein.

58.   Defendant Department of Mental Health is required by District of Columbia law to "plan, develop, coordinate, and monitor comprehensive and integrated mental health systems of care for adults . . . [and to] arrange for all authorized, publicly funded mental health services and mental health supports for residents of the district, whether operated directly

Complaint – p. 13.

by, or through contract with, the Department." D.C. Law § 7-1131.03 and § 7-1131.04.

59. Defendant Martha Knisley is the Director of the DMH was operating under the color of law as a representative of a public entity and within the scope of her public employment for DMH which is the agency responsible for regulating all mental health services and mental health supports in the District of Columbia and is responsible for assessing and meeting the service needs of District of Columbia consumers of mental health services.

60. Northwestern was certified by and/or contracted with the District to deliver services on behalf of the District, fulfilling DMH's obligations under the District's laws and providing governmental services for DMH.

61. John Stupak is Acting Director of Northwestern operating under the color of law, statutes, regulations, and customs of the District of Columbia and within the scope of his employment.

62. The policies and actions of the Defendants have violated and continue to violate the PAIMI Act.

63. Defendants, acting under color of law directly or through agents, have violated and continue to violate the rights of Plaintiff as guaranteed by the PAIMI Act.

64. The Civil Rights Act of 1871, 42 U.S.C. §1983, provides relief for persons who, under color of state law, have been deprived of any rights, privileges or immunities secured by federal law.

## COUNT III
## FIRST AND FIFTH AMENDMENT

65. Plaintiff incorporates paragraphs 1 through 40 as if fully set forth herein.

Complaint – p. 14.

66.     As the designated protection and advocacy system for the District of Columbia, Plaintiff

        has a protected right under the First and the Fifth Amendments of the U.S. Constitution to

        communicate and consult with people with mental illness who receive services from the

        District of Columbia.  Access to clients' names and contact information is essential for

        effective communication between Plaintiff and Plaintiff's clients and to investigate

        allegations of abuse or neglect of individuals with mental illness.  Advocacy Center v.

        Stalder, 128 F. Supp.2d 358, 365 (M.D. La. 1999).

67.     Defendants, acting under color of state law, directly or through agents and employees,

        have violated and continue to violate the rights of Plaintiff as guaranteed by the First and

        Fifth Amendments of the U.S. Constitution.

68.     The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides relief for persons who have

        been deprived of any rights, privileges, or immunities secured under the U.S.

        Constitution.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court:

A.      Grant a preliminary and thereafter permanent injunction against Defendants, their agents

        and employees, and all those acting in active concert, or under contract, or other

        arrangement with them, ordering that they provide ULS-P&A, within three days of the

        date of this order:

        1.  the identities and contact information of consumers of mental health services

        who received services from Northwestern from May, 2002, to the present, for

        whom (1) staff at Northwestern or Northwestern acted as representative payee or

Complaint – p. 15.

for whom (2) Northwestern held funds or had authority over any of their funds, and/or of those consumers' guardians, if they exists;

2. any and all DMH investigation reports concerning allegations of financial mismanagement by Northwestern, and the related corrective action plans (and/or any response provided by Northwestern), as well as any subsequent investigation findings or recommendations, and any records received and/or reviewed or prepared by DMH in preparing the report, including but not limited to records which describe persons who were interviewed, physical and documentary evidence, records prepared or maintained by Northwestern evidencing who provided services to the consumers, when, and how often, and any reports concerning or responsive to allegations that Northwestern financially mismanaged consumers' funds prepared;

3. for individuals for whom ULS-P&A has presented authorizations, any and all records requested in exhibits 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, and 16 attached to the Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction, which records are within the possession or control of Defendants or their agents;

4. any and all requested records of individual consumers of mental health services that received  services from Northwestern, including any correspondence and internal memoranda related to financial mismanagement, financial and billing/invoicing records for services provided to and housing for clients, and any records or documents related to Northwestern or its staff's actions as representative payee, which are within the possession or control of Defendants or

their agents, for whom individual authorization has been or will be provided;

5. any and all records of individuals identified in para. 1, including any correspondence and internal memoranda related to financial mismanagement, financial and billing/invoicing records for services provided to and housing for clients, and any records or documents related to Northwestern's or its staff's actions as representative payee, which are within the possession or control of Defendants or their agents, for whom authorization is not required under the PAIMI Act because those individuals do not have guardians and are unable to authorize their release as well as those for whom their guardian is an agency of the District of Columbia; and

B.   Declare that Defendants refusal to provide ULS-P&A with prompt access to the identities and contact information of the individuals with mental illness described, and/or of their guardians is a violation of the PAIMI Act and its implementing regulations as well as the First and Fifth Amendment;

C.   Declare that Defendants denial of access in a timely manner to reports of investigations prepared by DMH concerning abuse, neglect, or injury of individuals with mental illness along with corrective action plans and supporting documentation and other records requested related to suspected abuse or neglect is a violation of the PAIMI Act and its implementing regulations as well as the First and Fifth Amendment;

D.   Permanently enjoin Defendants, their agents and employees, and all those acting in active concert, or under contract, or other arrangement with them from denying any and all future access to facilities, records, employees, and residents in accordance with the

Complaint – p. 17.

PAIMI Act, 42 U.S.C. §10801 <u>et seq.</u> and relevant implementing regulations; and

E.      Award Plaintiff its attorney's fees and costs pursuant to 42 U.S.C. § 1988.

F.      Award such further relief at law and in equity that the Court deems to be proper.

Respectfully submitted,

Kelly M. Bagby
D.C. Bar # 462390
Legal Director
University Legal Service - P&A
220 I Street, NE Suite 130
Washington, D.C.  20002
(202) 547-0198 ext 117
(202) 547-2662 fax


Mary Nell McGarity Clark,
D.C. Bar # 419732
Managing Attorney
University Legal Service - P&A
220 I Street, NE Suite 130
Washington, D.C.  20002
(202) 547-0198 ext 141
(202) 547-2662 fax


Dated:   6/21/04


Complaint – p. 18.