Treatment Programs, L.L.C, 152 F. Supp. 2d 1150, 1172 n.1 (N.D. Ia. 2001); Arizona Center for Disability Law v. Allen, 197 F.R.D. 689 (D. Az. 2000); Maryland Disability Law Center v. Mount Washington Pediatric Hospital, 664 A.2d 16 (Md. App. 1995).

Based on the multiple investigations of Northwestern regarding its potential mismanagement of consumers' funds needed to pay for their daily living expenses and DMH's substantiated findings regarding that mismanagement, there can be no question that Plaintiff has probable cause to suspect abuse or neglect of these consumers. See Exhibit 3, Declaration of Celeste Valente, ULS-P&A, of 6/17/04, at para. 7.

Therefore, ULS-P&A has a clear right to access all of the requested records concerning Northwestern's care and treatment of the mental health consumers, to the extent such consumers have provided authorizations for release of those documents or to the extent the District is the individual's guardian or the individual does not have a guardian and is not able to consent to the release of such records.

The type of information and records available to the P&A is broad. In relevant part, the regulations implementing the PAIMI Act provide that:

> (c) Information and individual records, whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records, which shall be available to the P&A system under the [PAIMI] Act shall include, but not be limited to:
>
> (1) Information and individual records, obtained in the course of providing intake, assessment, evaluation, supportive and other services, including medical records, financial records, and reports prepared or received by a member of the staff of a facility or program rendering care or treatment. This includes records stored or maintained in locations other than the facility or program . . ..

42 C.F.R. § 51.41 (c).

ULS-P&A made requests on behalf of individual clients asking for individuals' records related to the provision of ACT services, billing records for services rendered, and use of the client's funds. Moreover, ULS-P&A requested, among other things: "Any and all documents in DMH's possession as a consequence of its investigation into the allegations of financial wrongdoing, including, but not limited to, Individual Rehabilitation Plans for each affected consumer, bank records for each affected consumer, and internal Northwestern correspondence related to the allegations of mismanaging consumers' funds." See Exhibit 4, Letter from Thorner to Knisley of 3/23/04. These records clearly fall within the ambit of the records which must be released under PAIMI Act regulations at 42 C.F.R. § 51.41(b) and (c)(1).

Therefore, this Court should order Defendants to release all requested records of those individuals for whom ULS-P&A has presented authorization and of all those who are not able to authorize access but who do not have guardians, or whose guardian is the District.

**B.   Defendants are Obligated to Provide to Plaintiff the Identities and Contact Information of Consumers as Necessary for the Purpose of Obtaining Authorization for Release of Records**

   **1.   Defendants are Obligated to Provide ULS-P&A Information Concerning Guardians**

As discussed below, Defendants have an obligation to provide to Plaintiff with the identities and contact information of all consumers who are competent to provide authorization for release of their records, as well as the identities and contact information for any guardians appointed on behalf of the consumers who are not competent. Plaintiff requires this information in order to obtain the necessary authorization for the release of the consumers' records.

The courts have recognized that prompt access to this information is critical so that the

29

P&A can contact the guardians to obtain consent to access relevant records, discuss concerns regarding the treatment and welfare of persons over whom the guardian has authority, provide information regarding the P&A's services and the rights of persons with disabilities, and for other purposes necessary to carry out the P&A's mandate under the Act.  See, e.g., Robbins v. Budke, 739 F. Supp. 1479 (D. N.M. 1990).

The regulations for the PAIMI Act state explicitly that, when there has been a denial of access to individuals or records because of a lack of authorization, the P&A shall be provided with the name, address and telephone number of the legal guardian, conservator, or other legal representative of an individual with mental illness. 42 C.F.R .§ 51.43. At least one court, clarifying these regulations, has expressly ruled that access to guardian/legal representative information is available to the P&A in its role as a monitor of health and safety – without any showing of specific potential abuse or neglect. Pennsylvania Protection and Advocacy, Inc. v. Royer-Greaves School for the Blind, 1999 WL 179797 at *9-12 (E.D. Pa. March 25, 1999).

The court found that the P&A need not have a probable cause belief regarding abuse or neglect in order to obtain the information. Id. at *9-10 (citing Robbins v. Budke, 739 F. Supp. 2d. 1479, 1489 (D.N.M. 1990). In discussing a substantially identical regulation issued pursuant to the Developmental Disability Act, 45 C.F.R. § 1386.22(i), the court noted that the regulation:

> must be intended to address the situation where a P&A requests to see the records of a resident or residents at a facility, but is unable to provide a sufficient basis of complaints or probable cause to warrant access, and the resident or residents are not clients of the P&A. In such a situation, the P&A would need the permission of the guardian to see the records, but conceivably would not know how to contact the guardian, and the facility can simply deny access by telling the P&A that they are not authorized to view the records. This is the situation presented in the instant case, and the

30

> only remedy is to provide the P&A with names and addresses of the guardians.

Royer-Greaves School, at *10.

The interpretative guidance for the PAIMI Act regulation, which is contained in the PAIMI Act regulations' preamble, is in agreement with the Royer-Greaves School court. The guidance states that the P&A "has no requirement to provide justification concerning their need for access to information regarding guardians, conservators or legal representatives and this information should be provided promptly." 62 Fed. Reg. 53548, 53562 (Oct. 15, 1997).

The court in Robbins, 739 F.Supp. 2d. 1479, issued a similar order under the PAIMI Act. In Robbins, the court found that a hospital's failure to institute a procedure that ensured prompt compliance with a P&A's request to obtain guardian consent for access to patient records precluded the P&A from evaluating and acting on patient concerns in a timely manner. The court found that such "delays may cause a violation of rights to go unaddressed until it is too late to remedy." Id. at 1488.

### 2. Defendants are Obligated to Provide ULS-P&A Information Concerning Individuals

Defendants must also release names and contact information of all consumers who have been assigned to Northwestern from May, 2002 to the present, for whom (1) staff at Northwestern or Northwestern acted as representative payee or for whom (2) Northwestern held funds or had authority over any of their funds, or of those consumers' guardians if they have a guardian.

In Georgia Advocacy Office v. Borison, 238 Ga. App. 780, 520 S.E.2d 701 (Ga. App.

31

1999), a case with facts strikingly similar to this one, the Georgia Court of Appeals held that a facility was required to provide the names and contact information of persons for whom the P&A had probable cause to believe had been abused and/or neglected, but could not identify. The Georgia P&A opened an investigation to determine whether persons with disabilities who were the patients of a certain doctor were the victims of abuse or neglect. However, the P&A had no way to identify those persons, nor could they be sure that those persons had disabilities. The P&A informed the subject of its investigation and requested the names and contact information for that doctor's patients so that it could access and interview them. The subject denied access to the information.

The court held that the Defendant was required to provide the names and contact information of the doctor's patients. The court recognized that the P&A could not fulfill the requirements of the DD Act because it could not identify the persons whom it sought to protect:

> Armed with a showing of "probable cause" as defined by federal law, [the P&A] then contacted [the Defendant] to obtain additional facts. But at that juncture [the P&A's] efforts became stymied. Although [the P&A] presented probable cause suggesting that numerous persons may have been victimized, it could not identify them by name. Nor could [the P&A] initiate contact with unidentified persons. Without access to the records, [the P&A] . . . essentially were [sic] unable to provide their consent.

Borison, 238 Ga. App. at 783. The Court held that the Defendant must provide the information sought by the P&A, directing the trial court to "devise a plan for ensuring an expeditious and confidential review of these records in a manner the court considers appropriate, to determine which, if any, [patients] . . . were subjected to abuse or neglect . . . . To hold otherwise would unnecessarily insulate potentially culpable Defendants from accountability for their purported

32

misdeeds." Id. at 784-85.

A similar ruling was reached in Cramer v. Chiles, No. 98-43-MISC-T-26 (M.D. Fla. Sept. 1, 1998), Exhibit 20. The court found that the DD Act and its implementing regulation at 45 CFR § 1386.22(i), which is substantially identical to the analogous PAIMI Act regulation, authorized the P&A's access to the names of consumers, in addition to the identity of guardians. Id.

In this case, ULS-P&A has received information that Northwestern may have abused or neglected persons with mental illness with respect to the use of consumers' funds. Based upon the information it has received, ULS-P&A commenced a full investigation of Northwestern's conduct. However, because ULS-P&A does not know the names or contact information of those persons affected, ULS-P&A is unable to access, communicate, or consult with them and, ultimately, cannot determine whether they are or have been the victims of abuse or neglect. Based on all of the above, Defendants must promptly provide this information to Plaintiff.

### C. The PAIMI Act Mandates Access to Investigative Records

The PAIMI Act, its implementing regulations and case law leave no doubt that Defendants are required to provide ULS-P&A with access to DMH's investigation reports (including corrective action plans) and any documents reviewed in developing such reports.

In relevant part, the regulations implementing the PAIMI Act state that:

> Information and individual records, whether written or in another medium, **draft or final**, including handwritten notes, electronic files, photographs or video or audio tape records, which shall be available to the P&A system under the [PAIMI] Act shall include, but not be limited to:

> \* \* \* \*
>
> (2) Reports prepared by an agency charged with investigating abuse neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself, that describe any or all of the following:
>
> (i) Abuse, neglect, or injury occurring at the facility;
>
> (ii) The steps taken to investigate the incidents;
>
> (iii) Reports and records, including personnel records, prepared or maintained by the facility, in connection with such reports of incidents; or
>
> (iv) Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings.

42 C.F.R. § 51.41(c) (emphasis added).

The interpretative guidance for the regulations contained in its preamble provides that: "In order for the P&A system to carry out its mandate to protect the rights of individuals with mental illness and to investigate allegations of abuse or neglect in public and private facilities, they must be empowered to access information contained in all records relevant to such activities. In all circumstances where there is a direct conflict these regulations will supersede State law unless State law gives greater access." 62 Fed. Reg. 53560 (Oct. 15, 1997). The guidance further states that P&As must have sufficient access to records to determine "whether the investigation of another agency or facility was sufficiently thorough." Id. at 53559-60. Indeed, ULS-P&A has this very interest – determining the sufficiency of DMH's investigation and monitoring Northwestern's implementation of its corrective actions and transition plans to assure the protection of consumers.

34

The courts have affirmed P&A access to public investigation reports, notwithstanding any restrictions to their disclosure contained in state law. E.g., Iowa Protection and Advocacy Services, Inc. v. Rasmussen, 206 F.R.D. 630, 2001 WL 1809404 (S.D. Iowa 2002). In Rasmussen, the court issued a permanent injunction barring the Iowa state survey and certification agency from denying the Iowa P&A access under the PAIMI Act to its investigative findings regarding a restraint-related death, and rejected the State's claims that Iowa State law prohibits disclosure of the report. The court also ordered the State to disclose a facility's internal investigation report in its possession. In granting the permanent injunction, the court gave great weight to the P&A's argument that denial of access to these reports would cause it irreparable harm – i.e., replicating these reports through the P&A's own investigation would be time consuming and costly.

Further, the court in Rasmussen rejected the argument of Defendants that the regulations implementing the PAIMI Act may not require the release of certain specific types of investigation findings. Id. at 639. It is clear from this decision that the report must be released to the P&A regardless of the nature of the investigative findings. Accordingly, Defendants may not withhold the investigation report based on the concern that its disclosure may be ill-advised because of its specific content, or because of the possibility that the material may be misleading, other concerns raised informally by DMH.

Moreover, the court held that Congress, in enacting the PAIMI Act, "occupied the field" with respect to rules concerning disclosure of investigatory information. "Protection and advocacy systems are established as independent checks on state care and regulation of care of dependent adults. That independent check would become meaningless if a state was allowed to

35

simply legislate away a protection and advocacy system's power to investigate by enacting restrictions." Id. at 639. The fact that P&A authority preempts contrary state law on records disclosure is made clear in the PAIMI Act itself at 42 U.S.C. § 10806(b)(2)(c), and its implementing regulations at 42 CFR 51.31(i). Accordingly, DMH may not rely on DC law or internal policy as a bar to disclosure of any of the documents demanded.[11]

### D. Defendants' Delay in Releasing Documents Violates Federal Law

ULS-P&A made its initial request to Northwestern and DMH in March, 2004. To date, DMH has only provided some these documents. Northwest has only permitted ULS-P&A to review certain limited documents. Therefore, this Court should order their immediate access to all of the information requested.

It is critical that Plaintiff obtain access to the records requested promptly so that its investigation can be effective. In Robbins v. Budke, 739 F.Supp. 2d. 1479 (D.N.M. 1990), the court found that delays of up to one month in processing requests for the release of records precluded the P&A from evaluating and acting on possible incidents of abuse and neglect in a timely manner. The court stated that such delays may prevent the P&A "from acting within prescribed deadlines or may cause a violation of rights to go unaddressed until it is too late to remedy." Id. at 1488. Apparently, relying on this concern and the conclusion that the PAIMI and DD Acts are intended to be applied in a consistent manner, another court, in a case arising

---

[11] Further, case law clarifies that investigative reports making reference to individuals are available to a P&A, even though such individuals themselves may not be privy to the records under state law. Pennsylvania Protection and Advocacy, Inc. v. Houstoun, 228 F.3d 423 (3rd Cir. 2000); Center for Legal Advocacy v. Hammons, 323 F.3d 1262 (10th Cir. 2003).

36

under the PAIMI Act, applied the deadlines for the release of records -- three days -- set out in the DD Act. <u>Iowa Protection and Advocacy Services, Inc., v. Gerard Treatment Programs, LLC</u>, 152 F.Supp. 2d 1150 (N.D. Iowa 2001). Clearly, the three month delay ULS-P&A has endured is too long.

Accordingly, DMH may not delay the disclosure of the records sought any further. Additionally, it may not assert that the investigation report and underlying documents reviewed should be withheld pending further DMH investigation activities. Defendants must provide to ULS-P&A all investigation reports, corrective action plans, other responses provided by Northwestern (including any other investigation reports and responses developed subsequently), and all underlying documents the agency reviewed when conducting the investigation. The underlying documents the agency review, shall include, but not be limited to: correspondence to and from Northwestern and DMH concerning allegations of financial wrongdoing, similar correspondence to and from Dr. Gleason, former psychiatrist at Northwestern, and any and all internal correspondence and memoranda concerning DMH's investigation of the allegations.

For the foregoing reasons, in light of this litany of federal statutory and regulatory violations, there is a substantial likelihood that Plaintiffs will prevail on the merits of their claims.

### III. A Preliminary Injunction Will Not Harm Defendants

The third factor in determining whether to grant a preliminary injunction involves an evaluation of the comparative harms to both parties both with and without preliminary injunctive relief. <u>Katz v. Georgetown Univ.</u>, 246 F.3d 685 (D. D.C. Cir. 2001); <u>Express One</u>

37

Int'l, Inc. v. U.S. Postal Serv., 814 F.Supp. 87, 92. If the balance of hardships to both parties favors the movant, preliminary injunctive relief may be granted. Elzie v. Aspin, 841 F.Supp. 439, 442 (D.D.C. 1993) (finding "no discernible injury to Defendants" and granting preliminary injunction to bar termination of homosexual military officer who served 11 years with distinction); Brown v. Artery Org. Inc., 654 F. Supp. 1106, at 1118 (D. D.C. 1987) (finding that the harm to Plaintiffs outweighed the harm to Defendants, warranting a preliminary injunction to bar the conversion of low-income housing to high rent levels where Defendants "claim[ed] only that they *may* be harmed financially" while Plaintiffs would suffer significant hardships such as forced relocation, new jobs, new schools, and added transportation costs.)

A preliminary injunction in the instant case would result in no discernible injury to either Defendant, particularly as compared to the ongoing irreparable harm suffered by Plaintiff and the interests of those ULS-P&A seeks to protect. ULS-P&A must have the records to act quickly to ensure protection of both (1) the monetary interests of the Northwestern consumers – many of which are homeless and have a daily critical need for all monetary resources available and (2) the consumers' interest in obtaining appropriate mental health services from the new service provider.

On the other hand, DMH can have no legitimate claim for refusing to release a report that has already resulted in a corrective action plan that is presumably being implemented by Northwestern. Moreover, DMH also refuses to release the names and contact information of consumers, claiming that release would violate the consumers' privacy rights.

In Rasmussen, the court adopted the reasoning of several other courts – that, given the confidentiality requirements applicable to P&As, concerns regarding confidentiality may not be

38

asserted as a bar to disclosure to the P&A. Rasmussen, 206 F.R.D. at 642. The PAIMI Act expressly prohibits the P&A from redisclosing records, obtained through its investigatory authority, that are confidential under state or federal law. 42 U.S.C. § 10806(a). ULS-P&A cannot release any information it obtains under its "access" authority to the extent such information is confidential under law. 42 U.S.C. § 10806(a). However, by contrast, ULS-P&A has a very legitimate and urgent need to reach out to these vulnerable individuals to protect their interests.

A preliminary injunction will require Defendants to do no more than to comply with a federal statute and accompanying federal regulations. In a similar P&A access case, it has been held that "the court sees no harm that would come to the Defendants by forcing them to comply with the provisions of the [PAIMI] Act, a law adopted by the national legislature. Issuance of a permanent injunction in this case does not subject the Defendants to a penalty or hardship since it requires them to do exactly what the act requires, i.e., to comply with the law." The Advocacy Center v. Stalder, 128 F.Supp. 358, 368 (M.D. La. 1999). The balance is clearly in favor of the Plaintiff.

### IV. An Injunction will Further the Public Interest

The final factor bearing on the court's determination whether to issue a preliminary injunction is the public interest. Express One Int'l, Inc. v. United States Postal Servs., 814 F.Supp. 87, 92 (D. D.C. 1992) (granting preliminary injunction to defer mail service contract award in order to further the public interest in ensuring fairness and equity in the contracting process). The fact that the public interest as expressed by Congress may be served through enforcement of a federal statute may weigh heavily in favor of granting a preliminary injunction.

The Fund for Animals v. Clark, 27 F.Supp.2d 8, 14 (D. D.C. 1998) (finding the public interest would be served by an environmental impact study mandated by the National Environmental Policy Act and granting preliminary injunction to block an organized bison hunt in national parklands.) The court in Fund for Animals concluded the public has a general interest in "the meticulous compliance with the law by public officials." Id. at 14. See also Mylan Pharms., Inc. v. Thompson, No. C.A. 00-2876, 2001 WL 273073, at *24 (D. D.C. Mar. 13, 2001) (granting a preliminary injunction to a generic drug manufacturer where the public interest favored enforcement of federal law designed to make low cost generic drugs available).

The public interest will be served by granting ULS-P&A's Motion. First and foremost, doing so will further the intent of Congress in passing the PAIMI Act. Granting ULS-P&A's Motion will fulfill Congress' intent that the District of Columbia have an "effective" P&A system. Mississippi Protection and Advocacy System v. Cotten, 929 F.2d 1054, at 1058 (5th Cir. 1991). Similarly, granting the ULS-P&A Motion will further the public's interest in addressing and eliminating the mistreatment of persons with disabilities, Thomas by Thomas v. Davidson Academy, 846 F.Supp. 611 (M.D. Tenn. 1994), by allowing ULS-P&A to do that which it was intended to do: conduct investigations into the alleged abuse and/or neglect of persons with mental illness. See 42 U.S.C. § 10805.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant their Motion for a Preliminary Injunction and thereafter a permanent injunction enjoining Defendants from continuing to deny Plaintiff access to all records requested in pursuit of its statutory obligation to investigate suspected incidents of abuse and neglect. Furthermore, the Court

should enjoin the Defendants from engaging in similar acts in the future and order the Defendants to immediately give Plaintiff full access to the records requested.

Moreover, the Court should order the Defendants to pay reasonable attorneys' fees to the Plaintiff and access costs against Defendants.

Respectfully submitted,

Kelly R. Bagby
D.C. Bar # 462390
Legal Director
University Legal Service - P&A
220 I Street, NE Suite 130
Washington, D.C. 20002
(202) 547-0198 ext 117
(202) 547-2662 fax

Mary Nell McGarity Clark,
D.C. Bar # 419732
Managing Attorney
University Legal Service - P&A
220 I Street, NE Suite 130
Washington, D.C. 20002
(202) 547-0198 ext 141
(202) 547-2662 fax

Dated: June 25, 2004