IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS
2002 SEP 25 P 2: 50
RALPH L. DELOACH
CLERK
BY_____ DEPUTY
AT TOPEKA KS.

| | |
|---|---|
| KANSAS ADVOCACY AND PROTECTIVE SERVICES, INC., a Kansas Corporation,<br><br>　　　　Plaintiff,<br>vs.<br>STORMONT-VAIL HEALTHCARE, INC., a Kansas Corporation, d/b/a Stormont-Vail Regional Health Center, and MAYNARD OLIVERIUS in his official capacity as Chief Executive Officer of Stormont-Vail HealthCare, Inc.,<br>　　　　Defendants. | Case No. 00-4135-RDR<br><br>ENTERED ON THE DOCKET<br>DATE: 9-25-02 |

### MEMORANDUM AND ORDER

Plaintiff has brought this action "to challenge the defendants' refusal to provide documents relating to the death of an individual with mental illness, who at the time of death was a patient at Stormont-Vail, a hospital that provides mental health services for persons with mental illness." ¶ 1 of Plaintiff's complaint. Plaintiff is a protection and advocacy agency established pursuant to the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10805, and K.S.A. 74-5515, to review the care and treatment and protect the rights of persons with mental illness. As such plaintiff is authorized to "investigate incidents of abuse and neglect of individuals with mental illness" and to take appropriate action to "protect and advocate the rights of such individuals." 42 U.S.C. § 10801(b).

EXHIBIT A

The defendants in this case are Stormont-Vail HealthCare, Inc. doing business as Stormont-Vail Regional Health Center in Topeka, Kansas and Maynard F. Oliverius, the chief executive officer of the company in Topeka.

In response to notice of the death of a person while in seclusion and restraint, plaintiff requested that defendants produce the patient's complete medical file including: seclusion and restraint records, diagnoses records, activity schedule, medication records, staff progress notes and reports, autopsy results, Stormont-Vail restraint and seclusion policies, training records for staff implementing restraints and seclusion, admission records, treatment plan, and Stormont-Vail's follow-up activities after the patient's death.

Plaintiff sought these records pursuant to 42 U.S.C. § 10806(b)(3)(B) and § 10806(b)(3)(A) which defines "records" to include: "reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records."

Plaintiff also seeks a permanent injunction preventing defendant from denying plaintiff immediate access to the identified records of the patient and "all other individuals with mental illness that have died or received treatment at Stormont-Vail if a

2

complaint is received and/or probable cause exists to believe that abuse or neglect occurred." ¶ 24 of the Complaint. Plaintiff further requests a declaratory judgment that the denial of access to the patient's records and those of all other individuals with mental illness who have died or received treatment at Stormont-Vail upon valid request, violates PAIMI.

Three motions to dismiss and a motion for summary judgment are now pending before the court.

Mootness

Defendants assert in one of the motions to dismiss (Doc. No. 32) that this case is now moot because plaintiff already has the documents it seeks to obtain from defendants in this action.[1] Defendants contend that plaintiff has obtained these documents from a different source. In response, plaintiff admits that it has obtained many of the patient's records. But, plaintiff asserts that it does not have "observational" medication monitoring records. Plaintiff also asserts that it has not obtained records reviewed by the risk management committee at Stormont-Vail or records reviewed by the peer review committee during the investigation of the patient's death. In reply, defendants contend that the goal of this lawsuit was to obtain the materials needed to investigate the patient's death. Because (in defendants' opinion)

---

[1] The memorandum in support of this motion has been sealed and the motion to seal this document (Doc. No. 30) shall be formally granted.

3

plaintiff has sufficient records to do this investigation, defendants believe this matter is moot. We disagree with defendants' argument. This action was filed to obtain certain documents. Plaintiff contends that not all of the requested documents are in plaintiff's possession. This contention has not been disproved. Therefore, although it would appear to be in everyone's interest to determine whether substantially more can be gained by the litigation, the court cannot say with certainty that the case is moot. Accordingly, the court shall reject defendants' mootness argument. However, the court urges both sides to identify with specificity and an eye toward practicality what issues remain in this matter in future pretrial proceedings.

## Jurisdiction

Defendants contend that the PAIMI does not authorize the instant lawsuit. The intent of Congress is the determining factor in this analysis. Schmeling v. NORDAM, 97 F.3d 1336, 1343-44 (10th Cir. 1996). The plain language of the statute authorizes protection and advocacy agencies like plaintiff to have access to records under certain circumstances. 42 U.S.C. §§ 10805 and 10806. If records have been withheld from plaintiff, in spite of the dictate of the statute, then Congressional intent has been thwarted. The only way to enforce the statutory language, particularly with regard to a hospital not affiliated with the state, is to bring a lawsuit. Obviously, Congress anticipated the

4

possibility of protection and advocacy agencies instituting a legal action in both federal and state courts. 42 U.S.C. § 10807. Although the question of whether a private right of action to gain access to records in federal court has not been directly addressed by any court in a published opinion to our knowledge, in fact such lawsuits have been brought successfully in federal court. E.g., <u>Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center</u>, 97 F.3d 492, 497 (11th Cir. 1996); <u>Oklahoma Disability Law Center, Inc. v. Dillon Family & Youth Services, Inc.</u>, 879 F.Supp. 1110, 1112 (N.D.Okla. 1995); <u>Robbins v. Budke</u>, 739 F.Supp. 1479, 1488 (D.N.M. 1990). Congress has not stepped in since these cases were decided to explicitly prohibit such lawsuits. We acknowledge the cases cited by defendants which have denied a private cause to action to individual disabled persons under PAIMI or similar legislation. E.g., <u>Pennhurst State School & Hospital v. Halderman</u>, 451 U.S. 1 (1981); <u>Croft v. Harder</u>, 730 F.Supp. 342, 350 (D.Kan. 1989). However, these cases may be distinguished because they rely upon different, more vague portions of the statute and the plaintiffs were not protection and advocacy organizations which the statute has specifically authorized to have access to records. The court also acknowledges that there are state law issues involved in the area of medical and mental health records. However, the possibility of these issues could not have been overlooked by Congress. We believe the intent of Congress to

5

authorize protection and advocacy agencies to bring a lawsuit to gain access to records is clear in spite of the involvement of state law issues. In sum, the court believes Congress intended to permit plaintiff to bring a private action in federal court to gain access to records under PAIMI.

Defendants have suggested that this right of action does not apply against hospitals which are not affiliated with a state government. However, the state law granting protection and advocacy agencies access to records does not limit its reach to state hospitals. K.S.A. 74-5515 (regulating access to records by protection and advocacy agencies). This law provides that protection and advocacy agencies shall have access to "records" which is defined to include: "reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, injury or death occurring at such facility that describe incidents of abuse, neglect, injury or death occurring at such facility, and the steps taken to investigate such incidents, and discharge planning records."

Other district courts have recognized a right of action against private hospitals under PAIMI. <u>Iowa Protection & Advocacy Services, Inc. v. Gerard Treatment Programs</u>, 152 F.Supp.2d 1150, 1159 (N.D. Iowa 2001); <u>Wisconsin Coalition for Advocacy, Inc. v. Czaplewski</u>, 131 F.Supp.2d 1039, 1049 (E.D.Wis. 2001). The same

holding under a federal law similar to PAIMI, the Developmental Disabilities Act, 42 U.S.C. § 6000 et seq., (repealed and reconstituted as the Developmental Disabilities Assistance and Bill of Rights 42 U.S.C. § 1501 et seq.), was made in <u>Maryland Disability Law Center, Inc. v. Mt. Washington Pediatric Hospital, Inc.</u>, 664 A.2d 16, 22 (Md.App. 1994). Federal regulations governing protection and advocacy agencies for the mentally ill also speak to granting access to public and private facilities. 42 C.F.R. § 51.42(b).

In sum, we believe that state and federal law grants a right of access to records against a hospital not affiliated with a state government.

In defendants' supplemental memorandum in support of their motions to dismiss (Doc. No. 19), defendants contend that it would be an unconstitutional exercise of federal authority to regulate private hospitals in this fashion. However, we believe the federal government's authority under the Commerce Clause extends to regulating hospitals to this extent. Cf., <u>Freilich v. The Board of Directors of Upper Chesapeake Health, Inc.</u>, 142 F.Supp.2d 679, 694 (D.Md. 2001) (Health Care Quality Improvement Act, which grants limited immunity in connection with hospital peer review activities, was valid exercise of Commerce Clause power); <u>Ass'n of American Physicians & Surgeons v. U.S. Dept. of Health and Human Services</u>, 2002 WL 1917633 (S.D.Tex. 2002) (Health Insurance

7

Portability and Accountability Act which established standards for maintaining the privacy of health information by health plans falls within Congress's Commerce Clause authority).

State law privileges

Defendants contend that state law forbids the disclosure of records by a general hospital like Stormont-Vail in this instance. We do not believe that this assertion is consistent with legislative intent. As noted earlier, the Kansas Legislature granted protection and advocacy agencies a general right of access to records "of a facility rendering care and treatment" to persons who are developmentally disabled or mentally ill. K.S.A. 74-5515. In 1996, the Legislature passed a statute ("the care and treatment act for mentally ill persons" - K.S.A. 59-2945) which stated that the treatment or medical records of mentally ill patients in the possession of a district court or "treatment facility" shall not be disclosed except under certain conditions which included disclosure under the provisions of K.S.A. 65-5603. It should be noted that "treatment facility" under 59-2979 includes the psychiatric unit of a medical care facility, like Stormont-Vail. K.S.A. 59-2946(n). The disclosure permitted under K.S.A. 65-5603(a)(10) expressly included disclosure to plaintiff ("Kansas advocacy and protective services, inc.") of "any information . . . which concerns individuals who reside in a treatment facility and which is required by federal law and federal rules and regulations to be

available pursuant to a federal grant-in-aid program." However, "treatment facility" under K.S.A. 65-5603 is not defined to include the psychiatric unit of a medical care facility; it is limited to "a community mental health center, community service provider, psychiatric hospital and state institution for the mentally retarded." K.S.A. 65-5601(d).

Thus, there is a Kansas statute which permits protection and advocacy agencies broad access to records of a facility rendering care and treatment of mentally ill persons (K.S.A. 74-5515) and a statute for the protection of mentally ill persons which includes as an exception to the privilege against disclosure any information to plaintiff which concerns individuals in a treatment facility and which is required by federal law and federal rules and regulations to be available pursuant to a federal grant-in-aid program.

Defendants contend that there is a conflict between these two statutes which should be resolved by applying the more recently-passed statute to this case. Defendants cite State v. Unified Government of Wyandotte County, 955 P.2d 1136, 1152 (Kan. 1998) which states:

> When two statutes conflict . . . then the more specific, more recent statute controls. See Jones v. Continental Can Co., 260 Kan. 547, 556, 920 P.2d 939 (1996)("[O]lder statutes . . . are subordinate to new enactments . . ., as the newer statute is the later expression of the legislative intent and so will control if there is a possible conflict between the two."); State v. Le, 260 Kan. 845, Syl. ¶ 2, 926 P.2d 638 (1996) ("General and special statutes should be read together and harmonized whenever possible, but to the extent a

conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling.").

The court believes it is more consistent with legislative intent to read the statutes in harmony. The consistent threads in the statutes discussed above appear to be a desire to protect the rights and welfare of mentally ill and developmentally disabled people and to comply with the conditions of federal grant-in-aid programs. Neither goal is promoted by limiting the access of plaintiff or other protection and advocacy agencies to information concerning "individuals who reside in a treatment facility," particularly as "treatment facility" is defined in K.S.A. 65-5601(d) as opposed to K.S.A. 59-2946(n). Even with the broader definition used in K.S.A. 59-2946(n), limiting disclosure to the records of persons who "reside" in a treatment facility appears contrary to the goals of protecting the welfare of mentally ill persons and complying with the conditions of federal law.

Kansas courts will construe "and" to mean "or" when "necessary to reflect the true meaning and intent of a statute." State ex rel. Stephan v. Martin, 641 P.2d 1011, 1016 (1982). In this instance, the court believes it is consistent with the intent of the Legislature and in harmony with K.S.A. 74-5515 if the exception to the privilege against disclosure in K.S.A. 65-5603(a)(10) is read to include "any information to Kansas advocacy and protective services, inc. which concerns individuals who reside in a treatment

10

facility [or] which is required by federal law and federal rules and regulations to be available pursuant to a federal grant-in-aid program." Accordingly, the court does not believe Kansas law recognizes a broad privilege against the disclosure of care and treatment records by Stormont-Vail in this instance.

Defendants have also argued that the Kansas laws grant a privilege against disclosure of peer review materials (K.S.A. 65-4915) and risk management materials (K.S.A. 65-4925). The broad statutory definition of "records" in PAIMI, as previously recounted in this order, appears to cover peer review materials. 42 U.S.C. § 10806(b)(3)(A).

However, regulations promulgated in connection with the reauthorization of appropriations for PAIMI have indicated that certain state law privileges shall not be preempted.

> (a) Access to records shall be extended promptly to all authorized agents of a P&A system.
> . . .
> (c) Information and individual records . . . shall include but not be limited to:
> > (1) Information and individual records, obtained in the course of providing intake, assessment, evaluation, supportive and other services, including medical records, financial records, and reports prepared or received by a member of the staff of a facility or program rendering care or treatment . . .
> > (2) Reports prepared by an agency charged with investigating abuse, neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself .
> > . . .
> > (4) Reports prepared by individuals and entities performing certification or licensure reviews, or by professional accreditation

11

> organizations, as well as related assessments prepared for the facility by its staff, contractors or related entities, <u>except that nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees</u>.

42 C.F.R. § 51.41 (emphasis added).

The Third Circuit has rejected the exception in the regulations for peer review material protected from disclosure by state laws as an unreasonable interpretation of PAIMI. <u>Pennsylvania Protection & Advocacy, Inc. v. Houstoun</u>, 228 F.3d 423, 427-28 (3rd Cir. 2000). Prior to this decision, the Supreme Court of New Hampshire held that a New Hampshire law granting privileged status to the records of a quality assurance program was not preempted by the provisions of PAIMI. <u>Disabilities Rights Center, Inc. v. Commissioner, New Hampshire Department of Corrections</u>, 732 A.2d 1021 (N.H. 1999). In an unpublished decision, the U.S. District Court for the District of Colorado followed the New Hampshire court, not the Third Circuit, in deciding to enforce the state law privilege for hospital peer review materials in Colorado against the claim of a protection and advocacy agency. <u>Center for Legal Advocacy v. Hammons</u>, Case No. 99-WY-1478-CB (D.Colo., unpublished, 11/14/01). This decision is on appeal to the Tenth Circuit.

The law in Kansas, however, may be distinguishable from the above-cited cases. As defendants note, the statutory privilege

against disclosure of peer review materials in Kansas has not been construed to be absolute. In <u>Adams v. St. Francis Regional Medical Center</u>, 955 P.2d 1169, 1187 (Kan. 1998), the Kansas Supreme Court held that the privilege could be "outweighed by the fundamental right of . . . plaintiffs to have access to all the relevant facts." Consequently, this court may be able to order disclosure of peer review materials without preempting Kansas law, particularly given the advocacy role of plaintiffs and the confidentiality requirements which apply to information obtained under PAIMI. See 42 C.F.R. § 51.45. Accordingly, the court does not believe that partial judgment may be granted in favor of defendants on the basis of the Kansas statute authorizing a privilege against disclosure of peer review materials.

<u>Motion to dismiss Oliverius</u>

Defendant Maynard F. Oliverius has filed a motion to dismiss on the grounds that he is not a necessary party to this lawsuit. Doc. No. 7. Mr. Oliverius is the chief executive officer of Stormont-Vail Healthcare, Inc. Plaintiff asserts that it will not receive the relief it is requesting unless this court orders Mr. Oliverius to grant the access plaintiff is seeking. However, the court believes an order directed to Stormont-Vail, the company which employs Mr. Oliverius, would be sufficient without an order directed to any corporate employee or agent. See <u>Citizens for Clean Air, Inc. v. Corps of Engineers</u>, 349 F.Supp. 696, 706

(S.D.N.Y. 1972). Therefore, the court shall grant the motion to dismiss of Mr. Oliverius.

### Plaintiff's motion for summary judgment

Finally, the court shall deny plaintiff's motion for summary judgment which was argued together with plaintiff's response to defendants' motion to dismiss. Doc. No. 13. The court shall deny plaintiff's motion because plaintiff has not addressed the factors relevant to the issuance of the injunctive relief requested in the complaint and plaintiff's motion. Nor has the scope of the requested relief been justified to the court's satisfaction. In addition, while defendants have not satisfied the "heavy burden" of demonstrating that this case is moot (see U.S. v. W.T. Grant Co., 345 U.S. 629, 633 (1953)), plaintiff has not demonstrated the need for injunctive relief at this stage. Accordingly, the court will not grant plaintiff summary judgment on the basis of the record and arguments currently before the court.

### Summary

In conclusion, the court shall grant the motion to dismiss of defendant Oliverius and defendants' motion to seal. The court shall deny the motions to dismiss of defendant Stormont-Vail. The court shall also deny plaintiff's motion for summary judgment.

IT IS SO ORDERED.

Dated this 25th day of September, 2002 at Topeka, Kansas.

*/s/ Richard D. Rogers*
United States District Judge