UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

UNIVERSITY LEGAL SERVICES  )
PROTECTION AND ADVOCACY, INC.  )
    )
        Plaintiff,  )
    )
v.  )        Civil Action No: 1:04cv01021 (RBW)
    )
MARTHA B. KNISLEY, DIRECTOR  )
DISTRICT OF COLUMBIA  )
DEPARTMENT OF MENTAL HEALTH,  )
In her official capacity  )
    )
        Defendant.  )
_____)

## MEMORANDUM OPINION

Currently before the Court is the Plaintiff's Response to Order to Show Cause and

Renewed Motion for Attorneys' Fees[1] ("Pl.'s Renewed Mot.") [D.E. #31].[2]  For the reasons set

forth below, the plaintiff's motion will be granted and the Court therefore awards the plaintiff

attorneys' fees in the amount of $47,867.

### I. Background

University Legal Services Protection and Advocacy, Inc. ("ULS"), brought this action

against John Stupak, in his capacity as Acting Director of Northwestern Human Services

---

[1]The plaintiff previously filed a Motion for Attorneys' Fees ("Pl.'s Mot.") [D.E. #27] and this Court denied that motion without prejudice and ordered the plaintiff to show cause why its request for attorneys' fees should not be denied or substantially reduced.  See Order dated March 22, 2006.  The parties thereafter appeared before this Court on June 28, 2006, and presented oral arguments on the plaintiff's renewed motion for attorneys' fees.

[2]In response to plaintiff's initial motion for attorneys' fees, the defendant filed its Memorandum in Opposition to the Plaintiff's Memorandum in Support of Motion for Attorney's Fees ("Def.'s Opp'n").  The Plaintiff then filed its Reply to Defendants [sic] Opposition to Plaintiff's Memorandum in Support of Motion for Attorneys' Fees ("Pl.'s Reply").  The plaintiff has also filed its Memorandum in Support of its Response to Order to Show Cause and Renewed Motion for Attorneys' Fees ("Pl.'s Renewed Mem."), which incorporates its original motion for attorneys' fees.

("Northwestern"), and Ella Thomas,[3] in her capacity as Interim Director of the District of

Columbia's Department of Mental Health ("DMH").[4]  Pl.'s Mot. at 1.  ULS sought injunctive

and declaratory relief with the objective of gaining access to records it had requested from the

defendants under the Protection and Advocacy for Individuals with Mental Illness Act of 1986

("PAIMI Act"), 42 U.S.C. §10801-10827 (2000).  Pl's Mot. at 1-2.  As a result of a "Stipulation"

entered into by ULS and the DMH, this Court, on July 15, 2004, appointed ULS as a limited

client representative and ordered the DMH to provide ULS with a list of names and contact

information of those individuals over whom Northwestern had responsibility for their funds.  See

Stipulation at 2-4.  The plaintiff then filed its motion requesting $47,867[5] in attorneys' fees as the

prevailing party in this litigation.  The defendant opposed the motion on the basis that the

plaintiff was not a prevailing party, arguing that there has not been a material change in the legal

relationship between the plaintiff and defendant.  Def. Opp'n at 3.

Concerned about whether a "substantial part [of this litigation] could have been avoided

if the plaintiff[] had sought client representative status under [the District of Columbia Mental

Health Information Act ("DCMHI")], rather than filing its lawsuit in this Court," this Court

denied the plaintiff's original motion for attorney's fees without prejudice with an instruction to

the plaintiff to provide "an explanation as to why it failed to seek designation as 'client

representatives' of those individuals for whom Northwest Human Services provided services in

---

[3]At the time ULS originally brought this suit, Martha Knisley was the Director of the DMH and she was a named party in the filings.  Ella Thomas was appointed Interim Director on October 17, 2005.

[4] Northwestern was dismissed from the case as a party with prejudice on March 16, 2005.  See Order dated March 16, 2005.

[5] The plaintiff originally requested $45,107, but then increased that amount by $2,760 by including the time expended preparing their reply brief.  See Pl.'s Reply at 9.

the Superior Court of the District of Columbia pursuant to D.C. Code § 7-1201.01(3)."  <u>See</u>

Order dated March 22, 2006.  In response, the plaintiff contends that "[t]he fact that [it] agreed to

a settlement that incorporated state law does not in anyway [sic] mean that [it] does not also have

the same right of access under federal law or should have to be required to first follow a state law

procedure in this or any future case."  Pl.'s Renewed Mem. at 2.  Moreover, the plaintiff argues

that it was proper to bring the case in this Court because its claim was based on the PAIMI Act, a

federal statute, thereby vesting original federal question jurisdiction in this Court.  <u>Id.</u> at 2-3.

Additionally, the plaintiff argues that being appointed a "client representative" under District of

Columbia law was an "anomaly" and done "solely for settlement purposes."  <u>Id.</u> at 7.[6]

Because the plaintiff's original claim was brought under federal law and the plaintiff

could not have predicted that it would eventually be settled under a non-federal statute, the

plaintiff was reasonable in bringing the action in this Court.  Moreover, one of the terms of the

Stipulation was that each party, "reserve[d] all claims . . . that they have raised, as well as any

others that may be available to them . . . ."  Stipulation at 1.  Therefore, the plaintiff preserved the

right to pursue its federal claim.  Accordingly, the Court will not deny or deduct the amount of

attorneys' fees requested by the plaintiff because it brought its claim in this Court rather than in

the Superior Court of the District of Columbia.  The Court will therefore address whether the

plaintiff is entitled to attorney's fees, and if so, in what amount.

## II. Standard of Review

Federal Rule of Civil Procedure 54(d)(2)(B) requires that a plaintiff requesting attorney's

---

[6] The plaintiff also advances an additional argument that the DCMHI conflicts with the PAIMI Act and is therefore preempted by the PAIMI Act.  Pl.'s Mem. at 6.  However, because the Court has decided to grant attorneys' fees based on other arguments, the Court need not address this argument.

fees "specify the judgment and the statutes, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought." Fed. R. Civ. P. 54(d)(2)(B). Here, the plaintiff seeks an award of attorneys' fees pursuant to 42 U.S.C. § 1988 (2000). Pl's. Mot. at 1. This statue provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). While courts have discretion under the statute whether to award attorneys' fees, the Supreme Court has stated that the statute was designed to ensure "effective access to the judicial process" and that courts should ordinarily award attorneys' fees to a prevailing plaintiff unless circumstances dictate that such an award would be unjust. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).

In order for this Court to award attorney's fees under the PAIMI Act, the plaintiff must first demonstrate that it is the "prevailing party" within the meaning set forth in 42 U.S.C. §1988. In Hensley, the Supreme Court outlined the requirements that a party must satisfy in order to qualify as a prevailing party. 461 U.S. at 433. A plaintiff is a prevailing party if "[it] succeeded on any significant issue in litigation which achieve[d] some of the benefit the part[y] sought in bringing suit." Id. (internal quotations and citation omitted). Success can be achieved through a judgment on the merits or a settlement agreement enforceable pursuant to a court-issued consent decree. See Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Heath and Human Res., 532 U.S. 598, 604 (2001) (noting that its precedent "taken together establish that enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees.").

4

### III. Analysis

**A. Prevailing Party Status**

The plaintiff argues that it is the prevailing party because it "succeed[ed] on [a] significant issue in [this] litigation [and] it achieve[d] some benefit [it] sought by bringing suit." Plaintiff's Memorandum in Support of Motion for Attorneys' Fees ("Pl.'s Mem.") at 3 (citing Hensley, 461 U.S. at 433). On the other hand, the defendant contends that the plaintiff is not a prevailing party because it did not receive any relief on the merits of its claim. Def.'s Opp'n at 3. Specifically, the defendant contends that because "there [was] no relief granted based on the PAIMI Act," the plaintiff is not entitled to attorneys' fees as the prevailing party. Id. Additionally, the defendant argues that "the consent decree did not materially change the legal relationship of the parties." Id. at 5.

### 1.     Whether the Plaintiff Obtained a Judgment on the Merits

The defendant claims that the plaintiff cannot be a prevailing party because it did not acquire a judgment on the merits of its claim. Id. at 3. Specifically, the defendant alleges that the plaintiff only received the information it sought after it agreed that a valid authorization, pursuant to the District of Columbia Mental Health Information Act ("MHIA"), D.C. Code §7-1201.01(3), was required before the information it sought could be released to it. Id. The plaintiff concedes that it is not entitled to attorneys' fees based on having attained a judgment on the merits. Pl.'s Reply at 3. Rather, the plaintiff seeks prevailing party status based on the stipulation agreement signed by the Court. Pl.'s Mem. at 4. And the plaintiff is correct that in order to receive attorneys' fees a judgment on the merits is not required. Pl.'s Reply at 3-4.

Indeed the Supreme Court in <u>Buckhannon</u>, held that "[i]n addition to judgments on the merits, we have held that settlement agreements enforced through []consent decree[s] may serve as the basis for an award of attorney's fees."  532 U.S. at 604 (citations omitted).

Faced with this reality, the defendant also argues that because the consent decree was not exclusively based on the specific statutory authority under which the plaintiffs brought the underlying action, it cannot be deemed a prevailing party.  Def.'s Opp'n at 3-4.  The defendant relies on <u>Hewitt v. Helms</u>, 482 U.S. 755 (1987) for the proposition that "a plaintiff [is required to] receive at least some relief on the merits of his claim before he can be said to prevail."  <u>Id.</u> at 3 (citing <u>Hewitt</u>, 482 U.S. at 760).  However, <u>Hewitt</u> is inapposite to the situation here because there, the Supreme Court specifically addressed the question of "whether a party who litigates to judgment and loses on all of his claims can nonetheless be a 'prevailing party' for purposes of an award of attorney's fees."  <u>Hewitt</u>, 482 U.S. at 757.  Here, the plaintiff is a prevailing party by virtue of the judicially enforceable stipulation entered into by the parties.  Although the stipulation was not based on the PAIMI Act, it did provide the plaintiffs with some relief pursuant to the PAIMI Act.[7]  <u>See</u> Stipulation at 3.  Specifically, the stipulation required that,

---

[7]The PAIMI Act provides:

(a) Authority; independent status; access to facilities and records; advisory council; annual report; grievance procedure

A system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall--

**(1)** have the authority to--
  **(A)** <u>investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the  system or if there is probable cause to believe that the incidents occurred</u>;
  **(B)** pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State; and

(continued...)

pursuant to the PAIMI Act, the DMH must grant the plaintiff access to records of individuals

who have been or may be subject to abuse or neglect.  Id.  Moreover, regardless of the statutory

basis for the consent decree, the plaintiff brought this case seeking, among other things, the

names of recipients of mental health care for whom Northwestern was responsible for their

funds.  Through the consent decree, the plaintiffs received that information.  Accordingly, the

Court concludes that not only is the plaintiff a prevailing party by virtue of the stipulation,

Buckhannon, 532 U.S. at 604, but also because  "[the] plaintiff receive[d] at least some relief on

the merits of [its] claim . . . ."  Hewitt, 482 U.S. at 760.

## 2.    Whether the Consent Decree Materially Altered the Legal Relationship of the Parties?

The defendant also argues that the plaintiff cannot be the prevailing party because the

stipulation did not materially alter the legal relationship of the parties as required in Buckhannon.

Def.'s Opp'n at 5.  While advancing this argument, the defendant nonetheless concedes that the

stipulation "changed the legal status" of the plaintiff "as it was appointed the client representative

for the unknown and unidentified class of persons for the limited and exclusive purpose of

authorizing [the] defendant to disclose the identity and contact information to [the] plaintiff in

accordance with [the] MHIA."  Id.  However, the defendant argues that "this appointment did not

materially alter the legal relationship of the parties."  Id.  Accordingly, the defendant contends

---

[7](...continued)
   (C) pursue administrative, legal, and other remedies on behalf of an individual who--
      (i) was a individual with mental illness; and
      (ii) is a resident of the State, . . . .

42 U.S.C. §10805 (2000) (emphasis added)

7

that because its legal position in relationship to the plaintiff has not changed, it is impossible for

the plaintiff to establish the requisite alteration in the legal relationship between the parties.  Id.

In other words, the defendant notes that its position from the onset has been that "it was

prohibited by [the] MHIA to provide the identity and contact information to [the] plaintiff

without an appropriate authorization, in light of the lack of a specific provision of PAIMI that

would preempt [the] MHIA," id., and that its position remains the same.

Buckhannon is instructive on whether an agreement between parties has changed the legal

relationship between parties sufficient to bestow prevailing party status to a plaintiff.  There, the

plaintiff sued the state of West Virginia, two of its agencies, and 18 individuals, (referred to

hereinafter as "the petitioners"), seeking declaratory and injunctive relief on the ground that state

law violated the Fair Housing Amendments Act and the Americans with Disabilities Act.

Buckhannon, 532 U.S. at 600-01.  The West Virginia statute that was subject to challenge in

Buckhannon required, inter alia, that "all residents of residential board and care homes be

capable of 'self preservation' . . . ."  Id. at 600 (quoting W. Va. Code § 16-5H-1 (1998)).

Specifically, Buckhannon Board and Care Home, Inc., operated "care homes that provided

assisted living to their residents."  Id.  The homes "failed an inspection by the West Virginia

Office of the State Fire Marshal because some of the residents were incapable of 'self-

preservation' as defined [by W. Va. Code §§ 16-5H-1, 16-5h-2]."  Id.  The statute required "that

all residents of residential board and care homes be capable of 'self-preservation,' or capable of

moving themselves 'from situations involving imminent danger, such as fire.'"  Id. (citation

omitted).  The state legislature subsequently repealed the "self preservation" requirement, "and

[the] respondents moved to dismiss the case as moot."  Id. at 601. " The [d]istrict court granted

the motion, finding that the [] legislation had eliminated the allegedly offensive provisions . . . ."
Id. (footnote omitted).  The plaintiffs then requested attorney's fees as the prevailing party
arguing that "they were entitled to attorney's fees under the 'catalyst theory,' which posits that a
plaintiff is the 'prevailing party' if it achieves the desired result because the lawsuit brought
about a voluntary change in the defendant's conduct."  Id.  Although at that time most federal
courts of appeals recognized the "catalyst theory", the Fourth Circuit rejected the theory and
refused to award attorney's fees, reasoning that "[a] person may not be a 'prevailing party' . . .
except by virtue of having obtained an enforceable judgment, consent decree, or settlement
giving some of the legal relief sought." Id. at 602 (citing S-1 and S-2 v. State Bd. of Ed. of N.C.,
21 F.3d 49, 51 (4th Cir. 1994)).  The Supreme Court granted certiorari to resolve the circuit
conflict and affirmed the Fourth Circuit's position.  Id. at 605.  Accordingly, because there had
not been a "judicially sanctioned change" in the legal relationship of the parties, but rather a
voluntary change in the law, the Court found that the petitioners were not entitled to "prevailing
party" status.  Id. at 605.  The Supreme Court reasoned that "[a] defendant's voluntary change in
conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit,
lacks the necessary judicial imprimatur on the change."  Id. (emphasis in original).  Thus, the
Supreme Court concluded that "[its] precedents [] counsel against holding that the term
'prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the
legal relationship of the parties."  Id. (emphasis in original).

Here, the defendant argues that "[a]ny resultant change in [its] behavior and conduct . . .
was voluntary and predicated upon plaintiff's abdication of its claim that no authorization was
required."  Def.'s Opp'n at 5-6.  The defendant concludes that its "voluntary change in conduct,

although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the

necessary judicial <u>imprimatur</u> on the change." <u>Id.</u> at 6 (citing <u>Buckhannon</u>, 532 U.S. at 604).

The defendant adds that although the stipulation "changed the legal status of the plaintiff," there

was "no change, material or otherwise, in the legal position of the defendant." Def.'s Opp'n at 5.

However, the defendant incorrectly equates as identical the terms "legal position" and

"legal relationship." <u>Id.</u>  While the defendant is adamant that it has never wavered in its legal

position, the fact that the defendant has adhered to its original legal position is irrelevant.  In

<u>Buckhannon</u>, the Court focused on the legal relationship between the parties, not the legal

position or arguments that the parties held throughout the litigation.  532 U.S. at 604.  Here, as

for the legal relationship between the parties, there has been a material alteration.  Prior to the

litigation, the defendant refused to provide information to the plaintiff that it sought, thereby

creating an adversarial relationship between the parties.  Attempting to settle their differences,

the parties entered into the Stipulation.  The Stipulation appointed the plaintiff as "client

representative within the meaning of the District of Columbia Mental Health Information Act,

D.C. Code § 7-1201.01(3), for the sole purpose of authorizing defendant DMH to disclose

pursuant to D.C. Code § 7-1202.01 names and contact information of those individuals for whom

Northwest Human Services ("NWHS") acted as representative payee or managed personal funds

from May 2002 to the present, to the extent that DMH obtained such information during the

course of its oversight and monitoring of NWHS."  Stipulation at 2.  The Stipulation undoubtedly

created a new relationship between the parties.  Indeed, "[a]lthough a consent decree does not

always include an admission of liability by the defendant, . . . it nonetheless is a court-ordered

'chang[e] [in] the legal relationship between [the plaintiff] and the defendant.'"  <u>Buckhannon</u>,

10

532 U.S. at 604 (internal and external citations omitted) (alteration to the original).  Thus, the

Supreme Court's previous decisions "taken together, establish that enforceable judgments on the

merits and court-ordered consent decrees create the 'material alteration of the legal relationship

of the parties' necessary to permit an award of attorney's fees."  Id. at 604.  The Stipulation here

has the stature of a consent decree and therefore has the "judicial imprimatur" required to confer

prevailing party status on the plaintiff because it mandated a change in the defendant's conduct

which materially changed the relationship between the parties.  Id.

**B.  The Amount of Attorneys' Fees the Plaintiff is Entitled to Receive**

Once a plaintiff establishes that he is a prevailing party, the court must then determine

what fee is reasonable.  Hensley, 461 U.S. at 433.  Reasonableness, according to the Supreme

Court, is determined by analyzing "the number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate," as this calculation provides an objective basis on which a

court can make its determination as to the value of the lawyer's services.  Id.  This assessment

therefore does not necessarily lead to the conclusion that "the amount of time actually expended

is the amount of time reasonably expended."  Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir.

1980).  Accordingly, "[c]ounsel for the prevailing party should make a good faith effort to

exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ."

Hensley, 461 U.S. at 434.  As to the compensable hourly rate, courts in this jurisdiction typically

use what is called the "Laffey Matrix"[8] as the basis for determining the reasonable hourly rate.

---

[8] In Laffey v. Northwest Airlines, Inc., 746 F.2d 4, 12-13 (D.C. Cir. 1984), the District of Columbia Circuit
affirmed a standard devised by a former judge of this Court, whereby reasonable hourly rates are illustrated in matrix
form that is intended to be used in fee-shifting statute cases such as this one.

11

See, e.g., Falica v. Advance Tenant Servs., 384 F. Supp. 2d 75, 78-79 (D.D.C. 2005).  Using this matrix, the Court must adjust the amounts put at issue by the parties either upward or downward to reach a point that reflects "the characteristics of a particular case (and counsel) for which the award is sought."  Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354, 361 (D.D.C. 1983).

Here, the defendant does not contest the amount of fees requested by the plaintiff or the reasonableness of the fees.  The defendant has therefore conceded that the plaintiff's attorneys' fees are reasonable.[9]  Nevertheless, the Court has reviewed the statements submitted by the plaintiff to determine if the fees requested are indeed reasonable.  According to the documents filed, the plaintiff has requested less than 50% of the total time expended on this litigation.  Pl.'s Mot., Exhibit ("Ex.") D (providing detailed reports of time expended working on this litigation by attorneys and clerks).  And it appears that the plaintiff has not charged any duplicative or other superfluous time.  Furthermore, the plaintiff has used the Laffey Matrix to determine the correct fee, which is the preferred method for calculating the awardable fee used in this Circuit.  Id., Ex. B (Laffey Matrix) see also Laffey, 746 F.2d at 12-13.  Accordingly, this Court concludes that the fees requested by the plaintiff are reasonable.

## IV. Conclusion

For the foregoing reasons, the Court grants the plaintiff's motion for attorneys' fees in the amount of $47,867.

---

[9] This Court has previously held that when a party does not address certain arguments, the court may treat them as conceded.  See, e.g., Bancoult v. McNamara, 227 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded."); Stephenson v. Cox, 223 F. Supp. 2d 119, 122 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded.") .

**SO ORDERED** this 11th day December, 2006.[10]

REGGIE B. WALTON
United States District Court Judge

---

[10]An Order consistent with this Opinion is being issued contemporaneously herewith.